John J. Thyne III (SBN 214025)
Adam T. Carralejo (SBN 277617)
THYNE TAYLOR FOX HOWARD, LLP
205 East Carrillo Street Suite 100
Santa Barbara, California 93101
Telephone: (805) 963-9958
Facsimile: (805) 963-3814
Email: jthyne@ttfhlaw.com
         acarralejo@ttfhlaw.com

Attorneys for Plaintiff SOMER COUNTESS-BOYD

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| SOMER COUNTESS-BOYD, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>AMERIS BANK, a Georgia Corporation, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1.    FRAUD (CIV. CODE §§1572, 1573);**<br>**2.    VIOLATION OF 15 USC §§1601, et seq. (TILA);**<br>**3.    VIOLATION OF 15 USC §§1691, et seq. (ECOA);**<br>**4.    VIOLATION OF 42 USC §§3601, et seq. (FHA);**<br>**5.    UNFAIR, UNLAWFUL AND/OR FRAUDULENT BUSINESS PRACTICES (BUS. & PROF. CODE §§17200, et seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, SOMER COUNTESS-BOYD (hereinafter "Plaintiff"), by and through his attorney of record Adam T. Carralejo of Thyne Taylor Fox Howard, LLP, and in support of this Complaint Somer Countess-Boyd alleges the following:

1

**COMPLAINT**

## PROCEDURAL ALLEGATIONS

1.  Defendant AMERIS BANK is, and at all times herein mentioned was, a corporation organized under the laws of the State of Georgia and doing business in the State of California.

2.  Jurisdiction is proper in this Court under Title 28 of the United States Code section 1332, subsection (a)(1), because the matter in controversy exceeds the sum of $75,000 and Plaintiff and Defendant are citizens of different states.

3.  Venue is proper in this Court under Title 28 of the United States Code section 1391, subsection (b)(2), because this judicial district is where the substantial part of the events giving rise to this claim occurred and the property that is the subject of this action is situated.

4.  Plaintiff is ignorant of the true names and capacities of the parties sued as Does 1 through 50, inclusive, and therefore sues them under fictitious names. Upon learning their true names and capacities, Plaintiff will amend its Complaint to reflect the same.  Upon information and belief, Plaintiff alleges that DOES 1 through 50, inclusive, are responsible in some manner for the occurrences herein alleged and Plaintiff's damages as herein alleged were proximately caused by such occurrences.

## FACTUAL ALLEGATIONS

5.  On January 3, 2009, Plaintiff and her then-husband, Jerry Boyd ("Mr. Boyd"), purchased a single-family house at 35675 Dulock Road, Wildomar, California ("Home") for $304,500.  Both Plaintiff and Mr. Boyd lived in the Home with their four minor sons as their primary residence.

6.  The couple was married when the purchase occurred but only Mr. Boyd's name was put on the deed to the Home. California is a community property state and the house was purchased with community property funds and therefore the

Home was community property of the marriage despite being purchased in Mr. Boyd's name alone.

7.  On or about May 10, 2021, Mr. Boyd, without knowledge nor consent of Plaintiff, refinanced the Home with a loan and deed of trust with Defendant Ameris Bank (hereinafter "Ameris"). The deed of trust was recorded on May 17, 2021 securing a loan in the amount of $485,601.00. The Deed of Trust is incorporated herein and attached hereto as **Exhibit A**, as "Ameris DOT." Plaintiff still retaining all rights as a non-borrowing spouse in a community property state. Boyd received an approximate $125,000 in cash as part of the loan.

8.  On June 3, 2021, less than a month after securing the Ameris loan, Mr. Boyd petitioned for dissolution of the marriage in the Superior Court of California for the County of Riverside.

9.  On information and belief, Plaintiff alleges that Ameris' loan is a "FHA/HUD-insured mortgage" in that it is insured by the Federal Housing Administration ("FHA") and the Department of Housing and Urban Development ("HUD"). The information that forms the basis for this belief includes that representations of Ameris told Plaintiff it was an "FHA" loan and the text of the Deed of Trust consistent with a FHA/HUD-insured mortgage.

10. At some point after the divorce paperwork had been filed, Mr. Boyd listed the Home for sale without knowledge nor consent of Plaintiff.

11. On June 9, 2022, Mr. Boyd and Plaintiff agreed via stipulated judgment that (1) the Home was community property, such that Plaintiff's interest in the Home was confirmed, (2) Plaintiff was required to pay the Ameris loan moving forward, and (3) Plaintiff would have the right to buyout Mr. Boyd's interest in the Home, on the condition that Plaintiff would take the Ameris loan out of Mr. Boyd's name. This agreement was ordered by the Court and entered as a Judgment on August 10, 2022.

12. Beginning before June of 2022, as early as March of 2022, Plaintiff repeatedly contacted Ameris in attempts to assume the loan or get information about how to assume the loan. Plaintiff was already paying each monthly mortgage payment during this time.

13. Ameris employees were nonresponsive or gave conflicting and/or inaccurate information to Plaintiff regarding the assumability of the loan (or 'mortgage'), the existence of Mr. Boyd's ability to be released from the mortgage, and the laws and procedures that existed providing for the assumption of the loan by Plaintiff and the release from the mortgage by Mr. Boyd. Had Ameris' informed Plaintiff accurately, she could have included language in the stipulated agreement and Judgment providing for her assumption and Mr. Boyd's release.

14. Plaintiff was repeatedly told by Ameris employees that she needed to be a borrowing party on the Home's mortgage if she wished to access and administer her loan. Plaintiff was repeatedly told by Ameris Bank employees that she was not a Successor in Interest, by which they meant she could not assume the loan. A Successor in Interest is defined by 12 Code of Federal Regulations part 1024.31(a)(14), which states:

> **Successor in interest** means a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is:
>
> …
>
> (4) A transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property
>
> …

15. Eventually, on November 21, Ameris confirmed via telephone Plaintiff's successor in interest status. At that time Plaintiff demanded written confirmation. Attached hereto and incorporated herein as **Exhibit B** is the letter from Ameris confirming Plaintiff's Successor in interest status – although only two (2) pages of what is apparently a five (5) page letter was actually sent to Plaintiff. The letter states, on page three (3) at paragraph 3, that Plaintiff "… must execute and return the enclosed acknowledgment form … in order to request receipt of notices and communications about the mortgage loan …" Plaintiff never received an acknowledgement form. On information and belief, this acknowledgement form should have been included as the missing pages four (4) and five (5) of the confirmation letter.

16. This confirmation letter also states on page three (3) at paragraph 6 that "Whether or not you, the Confirmed Successor in Interest, execute and return the enclosed acknowledgment form … you will still be entitled to submit … Requests for Information under 12 CFR §1024.36 of RESPA (Regulation X)."

17. Soon after receiving the confirmation letter, Plaintiff was locked out of her account, rendering her unable to administer her loan and prove successor-in-interest status. Plaintiff was later told by Ameris employees that Mr. Boyd had called and requested that she be locked out of the account. Despite many requests over several months, Plaintiff was never able to receive any communications or information from Ameris after being locked out. Due to being locked out of the account, and due to the incomplete confirmation letter that did not contain all the required information, Plaintiff was unaware of her rights and Ameris' obligations under the Truth in Lending Act, and other Federal and State laws.

18. Plaintiff should have been informed and been able to be confirmed as Successor in interest by Ameris as early as June 2022. She would have been entitled to receive communications and submit Requests for Information from

Ameris.

19. Had Plaintiff been confirmed by Ameris as a Successor in interest, and had Ameris' employees been accurate and truthful in their information, they would have told Plaintiff that under 24 Code of Federal Regulations part 203.41(b):

> **Policy of free assumability with no restrictions.** A mortgage shall not be eligible for insurance if the mortgage property is subject to legal restrictions on conveyance, except as permitted by this part.

> No where in Part 203 – Single Family Mortgage Insurance does it permit legal restrictions on conveyances that are resulting from a divorce judgment, by which the spouse of the borrower becomes an owner of the property, such as that judgment between Plaintiff and Mr. Boyd.

20. Plaintiff was misled by Ameris employees that she could not assume the loan and that if she bought Mr. Boyd's interest in the Home, the loan would accelerate under the 'due-on-sale' clause.

21. Based on Ameris' representations, which Plaintiff relied upon, Plaintiff believed that she had to get another loan in order to pay-off Ameris' loan.

22. Ameris never informed Plaintiff and Plaintiff did not know now that the Garn-St. Germain Depository Institutions Act of 1982 (at 12 USC §1701j "Preemption of due-on-sale prohibitions" subdivision (d)) states:

> **Exemption of specified transfers or dispositions.** With respect to a real property loan secured by a lien on residential real property containing less than five dwelling units, including a lien on the stock allocated to a dwelling unit in a cooperative housing corporation, or on a residential manufactured home, a lender may not exercise its option pursuant to a due-on-sale clause upon –

...

> (7) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property;
>
> ...

Ameris was obligated to inform Plaintiff of this information as she was a Successor in interest.

23. Ameris represented to Plaintiff that she could only assume the loan if Mr. Boyd agreed and approved of the assumption, and that this requirement was imposed by Federal law.

24. In fact, the Ameris' representations were false in that Federal law allowed Ameris effected a release of Mr. Boyd. Also, Ameris could have substituted Plaintiff, with or without Mr. Boyd's release. 24 Code of Federal Regulations part 203.41 (Substitute Mortgagors) states:

> (a) **Selling mortgagor**. Except as provided in paragraph (d) of this section, the mortgagee may effect the release of a mortgagor from personal liability on the mortgage note, only if it obtains the Commissioner's approval of a substitute mortgagor, as provided by this section.
>
> (b) **Purchasing mortgagor**.
>
> (1) The Commissioner may approve a substitute mortgagor with respect to any mortgage insured under § 203.43h or § 203.43i only if the mortgagor is to occupy the dwelling as a principal residence (as defined in § 203.18(f)(1)) ...
>
> (f) Definition. As used in this section, the term substitute

mortgagor includes:

(1) Persons who, upon the release by a mortgagee of a previous mortgagor from personal liability on the mortgage note, assume this liability and agree to pay the mortgage debt; and

(2) Persons who purchase without assuming liability on the mortgage note or purchase where no release is given by the mortgagee to the previous mortgagor.

25. Ameris' refusal to permit Plaintiff's assumption was in direct violation of 24 Code of Federal Regulations part 203.512 (Free assumability; exceptions):

(a) **Policy of free assumability with no restrictions**. A mortgagee shall not impose, agree to or enforce legal restrictions on conveyance, as defined in § 203.41(a)(3) of this part, *or restrictions on assumption of the insured mortgage*, unless specifically permitted by this part or contained in a junior lien granted to the mortgagee after settlement on the insured mortgage. (emphasis added)

26. HUD provides procedural standards and guidelines that must be followed when servicing FHA/HUD-insured mortgages. As it pertains the mortgage for the Home, those procedural standards and guidelines are provided by Handbook 4330 "Administration of Insured Home Mortgages." Handbook 4330 provides:

This Handbook covers all phases of the administration of insured single family home mortgages, from the time the mortgage is closed through the time the mortgage insurance is terminated.

27. Chapter 6 of Handbook 4330 is titled "Changes of Mortgagors (Assumptions) or Servicers and Sale of Mortgages." At section 6-1 it states:

> 6-1 POLICY OF FREE ASSUMPTIONS WITH NO
> RESTRICTIONS. Mortgagees must not impose, agree to
> or enforce legal restrictions on conveyances, or on
> assumptions, unless specifically permitted by CFR 203.
> 512, or specified in a junior lien granted to the mortgagee
> after settlement.

At section 6-3 (Credit Review Requirements), Handbook 4330 states details the procedures Ameris should have followed to approve of Plaintiff's assumption and creditworthiness. Ameris did not inform Plaintiff of procedures for her assumption and her creditworthiness. On information and belief, Ameris did not follow these procedures and did not afford an opportunity for Plaintiff to prove her creditworthiness.

At section 6-6 (Release of Liability), Handbook 4330 states:

> A. The mortgagee must release a selling mortgagor from
> any personal liability for payment of the mortgage debt, if
> permitted by CFR 203. 258, and in accordance with the
> following procedures:

Section 6.6 continues with the procedures that should have been followed to permit Mr. Boyd's release. Ameris did not inform Plaintiff of procedures for Mr. Boyd's release. On information and belief, Ameris did not follow any procedures to effect Mr. Boyd's release.

28. Inevitably, Plaintiff was forced to get a mortgage on the property for $540,000 at an interest rate of 11.0% rather than Ameris' mortgage of $485,601 at a 3.1% interest rate, as was her right. This has resulted in significant hardship to the Plaintiff as a result of substantially higher monthly mortgage payments. Under Ameris' mortgage, Plaintiff's payment was $3,018.65 per month. The new loan required a $4,950.00 monthly payment. Therefore, Plaintiff has been forced to pay

$1,931.35 per month more than she should. On information and belief, the Ameris loan had 29 additional years of payments. Therefore, Plaintiff has or will have to pay an additional $672,109.80 due to Ameris' actions.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION FOR FRAUD

(Against AMERIS BANK and does 1 through 50, inclusive)

29. SOMER COUNTESS-BOYD re-alleges and re-incorporates herein paragraphs 1 through 28, above.

30. Ameris violated California Civil Code section 1572(2) (Negligent Misrepresentation by its conduct, including but not limited to:

    a.  Ameris represented to Plaintiff that she could not assume the mortgage, among other representations.

    b.  Plaintiff was entitled to assume the mortgage.

    c.  Ameris had no reasonable grounds for believing that Plaintiff could not assume the mortgage.

    d.  Ameris intended that plaintiff rely on the representation that Plaintiff could not assume the mortgage.

    e.  Plaintiff reasonably relied on Ameris' representation that she could not assume the mortgage.

    f.  Plaintiff was harmed by Ameris' representation that she could not assume the mortgage, among other representations.

    g.  Plaintiff's reliance on Ameris' representations were a substantial factor in causing her harm.

31. Ameris violated California Civil Code section 1572(3) (Concealment) by its conduct, including but not limited to:

    a.  Ameris disclosed some facts regarding the mortgage to Plaintiff, but intentionally failed to disclose that Plaintiff could assume the

mortgage, making the disclosure deceptive.

b.  Plaintiff did not know she was entitled to assume the mortgage.

c.  Ameris intended to deceive Plaintiff by concealing that she could assume the mortgage.

d.  Had Plaintiff known she was entitled to assume the mortgage, she would have taken the steps to assume the mortgage.

e.  Plaintiff was harmed by Ameris' failure to disclose that she could assume the mortgage, among other representations.

f.  Plaintiff's reliance on Ameris' concealment a substantial factor in causing her harm.

g.  In concealing Plaintiff's entitlement to assumption of the mortgage, Ameris acted in a willful, wanton, and malicious manner, in callous,, conscious, and intentional disregard for the interests of Plaintiff, and with knowledge that its conduct was substantially likely to vex, annoy, and injure Plaintiff. Ameris' conduct was made with intentional disregard to Plaintiff's legitimate interests and was acting in concert and at the direction of the Plaintiff's ex-husband, Jerry Boyd, in order to harm Plaintiff. As a result, Plaintiff is entitled to recover exemplary and punitive damages.

32. Ameris violated California Civil Code section 1573 (Constructive Fraud) by its conduct, including but not limited to:

a.  Ameris was in a confidential relationship with Plaintiff, in that Ameris had an affirmative duty to disclose accurate information to Plaintiff regarding the mortgage. Ameris represented to Plaintiff that she could not assume the mortgage, among other representations.

b.  Ameris' exploited Plaintiff's trust and confidence.

c.  Ameris failed to disclose that Plaintiff could assume the mortgage.

**COMPLAINT**

d.  Ameris knew or should have known that Plaintiff could assume the mortgage.

e.  Ameris misled Plaintiff by failing to disclose that she could assume the mortgage.

f.  Plaintiff was harmed by Ameris' representation that she could not assume the mortgage, among other representations.

g.  Plaintiff's reliance on Ameris' representations were a substantial factor in causing her harm.

h.  In perpetrating a constructive fraud upon Plaintiff, Ameris acted in a willful, wanton, and malicious manner, in callous, conscious, and intentional disregard for the interests of Plaintiff, and with knowledge that its conduct was substantially likely to vex, annoy, and injure Plaintiff. Ameris' conduct was made with intentional disregard to Plaintiff's legitimate interests and was acting in concert and at the direction of the Plaintiff's ex-husband, Jerry Boyd, in order to harm Plaintiff. As a result, Plaintiff is entitled to recover exemplary and punitive damages.

**SECOND CAUSE OF ACTION FOR VIOLATION OF 15 USC 1601, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

33. SOMER COUNTESS-BOYD re-alleges and re-incorporates herein paragraphs 1 through 32, above.

34. Title 15 United States Code sections 1601, *et seq.*, codifies the Truth in Lending Act ("TILA"), which ensures meaningful disclosure to borrowers such that borrowers can make informed decisions.

35. Some or all of Ameris's failures to disclose to Plaintiff were material.

36. Ameris' material nondisclosure caused Plaintiff harm in that she had to procure alternative financing to stay in her home.

**THIRD CAUSE OF ACTION FOR VIOLATION OF 15 USC 1691, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

37. SOMER COUNTESS-BOYD re-alleges and re-incorporates herein paragraphs 1 through 36, above.

38. Title 15 United States Code sections 1691, *et seq.*, codifies the Equal Credit Opportunity Act ("ECOA") to prohibit discrimination against consumers of credit transactions on the basis of race, color, religion, national origin, sex, marital status or age.

39. In failing to disclose or permit Plaintiff to assume the mortgage, Ameris discriminated against Plaintiff on account of her sex, instead following the direction of her ex-husband, among other reasons.

40. In failing to disclose or permit Plaintiff to assume the mortgage, Ameris discriminated against Plaintiff on account of her marital status as a recently divorced single woman, instead following the direction of her ex-husband, among other reasons.

41. Ameris' conduct was made with intentional disregard to Plaintiff's legitimate interests and was acting in concert and at the direction of the Plaintiff's ex-husband, Jerry Boyd, in order to harm Plaintiff. As a result, Plaintiff is entitled to punitive damages pursuant to Title 15 United States Code section 1691e, subsection (b).

**FOURTH CAUSE OF ACTION FOR VIOLATION OF 42 USC 3601, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

42. SOMER COUNTESS-BOYD re-alleges and re-incorporates herein paragraphs 1 through 41, above.

43. Title 42 of United States Code sections 3601, *et seq.*, codify the Fair Housing Act ("FHA") to prohibit discrimination in regards to residential real estate-related transactions because of race, color, religion, sex, handicap, familial

status, or national origin.

44. In failing to disclose or permit Plaintiff to assume the mortgage, Ameris discriminated against Plaintiff on account of her sex, instead following the direction of her ex-husband, among other reasons.

45. In failing to disclose or permit Plaintiff to assume the mortgage, Ameris discriminated against Plaintiff on account of her familial status as a recently divorced single woman, instead following the direction of her ex-husband, among other reasons.

## FIFTH CAUSE OF ACTION FOR UNFAIR, UNLAWFUL AND/OR FRAUDULENT BUSINESS PRACTICES PER BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

(Against AMERIS BANK and does 1 through 50, inclusive)

46. SOMER COUNTESS-BOYD re-alleges and re-incorporates herein paragraphs 1 through 44, above.

47. California Civil Code sections 17200, *et seq.*, broadly proscribes any unlawful, unfair or fraudulent business act or practice.

48. Ameris's actions in failing to accurately disclose to Plaintiff that she could assume the mortgage was unlawful, unfair, and fraudulent in nature.

49. As a result of its actions, Ameris was able to force Plaintiff to repay the mortgage and secure alternative financing that was far more expensive for her.

50. Plaintiff is entitled to restitutionary relief in the form of disgorgement of the funds to secure the release of the mortgage.

51. Plaintiff is entitled and request injunctive relief which would require Ameris to disclosure and allow assumptions of mortgages to ex-spouses in the after

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SOMER COUNTESS-BOYD respectfully prays that this Court grant the following relief:

**First Cause of Action for Fraud**

(Against AMERIS BANK and does 1 through 50, inclusive)

    1.     For general damages to be proved;

    2.     For special damages to be proved;

    3.     For costs of suit;

    4.     For exemplary and punitive damages in order to punish Ameris; and

    5.     For such other and further relief as the court may deem proper.

**Second Cause of Action for Violation of 15 USC 1601, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

    1.     For actual damages to be proved;

    2.     For penalty of twice the amount of any finance charge in connection with the transaction per 15 USC §1640(a)(2)(A)(i);

    3.     For $4,000 penalty per 15 USC §1640(a)(2)(A)(iv);

    4.     For attorney's fees;

    5.     For costs of suit herein incurred; and

    6.     For such other and further relief as the court may deem proper.

**Third Cause of Action for Violation of 15 USC 1691, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

    1.     For actual damages to be proved, including but not limited to mental anguish and non-monetary injuries;

    2.     For punitive damages pursuant to 15 USC 1691e(b);

    3.     For attorney's fees;

    4.     For costs of suit herein incurred; and

    5.     For such other and further relief as the court may deem proper.

**Fourth Cause of Action for Violation OF 42 USC 3601, *et seq.***

(Against AMERIS BANK and does 1 through 50, inclusive)

    1.     For actual damages to be proved;

2.      For attorney's fees;

3.      For costs of suit herein incurred; and

4.      For such other and further relief as the court may deem proper.

**Fifth Cause of Action for Unfair, Unlawful and/or Fraudulent Business Practices Per Business & Professions Code § 17200, _et seq._**

(Against AMERIS BANK and does 1 through 50, inclusive)

1.      For restitutionary damages;

2.      For injunctive relief;

3.      For costs of suit herein incurred; and

4.      For such other and further relief as the court may deem proper.


Dated: December 5, 2023          **THYNE TAYLOR FOX HOWARD, LLP**


By:  _/s/ Adam T. Carralejo_____
Adam T. Carralejo
Attorneys for Plaintiff Somer Countess-Boyd

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all causes of action for which a jury is available under the law.

Dated: December 5, 2023        **THYNE TAYLOR FOX HOWARD, LLP**


By: _/s/ Adam T. Carralejo_____
Adam T. Carralejo
Attorneys for Plaintiff Somer Countess-Boyd

**COMPLAINT**

# EXHIBIT A

DOC # 2021-0303598
05/17/2021 03:53 PM Fees: $147.00
Page 1 of 17
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: JACQUELINE #2386

Recording Requested By

First American Title Company

**Recording Requested By:**
**Ameris Bank, a Corporation**

**After Recording Return To:**
**Ameris Bank, c/o Docprobe, LLC**
**Attn: Final Document Department**
**1820 Swarthmore Avenue**
**P.O. Box 2132**
**Lakewood, NJ 08701**

**Prepared By:**
**Christina Scott**
**Ameris Bank**
**1110 Iron Point Road #180**
**Folsom, CA 95630**
**916-850-1530**

**Escrow No.:  107003-DI**
**LOAN #: 7165251609**

# 6509052.04
APN: 376-483-002

——————————— **[Space Above This Line For Recording Data]** ———————————

| FHA Case No. |
|---|
| **194-1671666-703-203B** |

# DEED OF TRUST

**MIN:  1009207-0000253908-8**

**MERS PHONE #: 1-888-679-6377**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
**(A) "Security Instrument"** means this document, which is dated **May 10, 2021,**                together with all Riders to this document.
**(B) "Borrower"** is   **JERRY R. BOYD, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY.**

Borrower's address is   **35675 DULOCK RD, WILDOMAR, CA 92595.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   **Ameris Bank.**

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 1 of 13                          CAEFHA15DL   0419
                                                                                          CAEDEDL (CLS)
                                                                                          05/07/2021 10:17 AM PST

LOAN #: 7165251609

Lender is **a Corporation,** organized and existing
under the laws of **Georgia.**
Lender's address is **1800 Parkway Place, Suite 820, Marietta, GA 30067.**

**(D) "Trustee"** is   **First American Title Company.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **May 10, 2021.**       The Note states that Borrower owes Lender **FOUR HUNDRED EIGHTY FIVE THOUSAND SIX HUNDRED ONE AND NO/100 * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** Dollars (U.S. **$485,601.00**                )

plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2051.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.
**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL   0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST

LOAN #: 7165251609

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

**County**                                                                    [Type of Recording Jurisdiction]
of **Riverside**
   [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #:  376-483-002**

which currently has the address of    **35675 DULOCK ROAD, WILDOMAR,**
                                                                                      [Street] [City]
California **92595**              ("Property Address"):
               [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     **1.    Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order;

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                          Page 3 of 13                                    CAEFHA15DL   0419
                                                                                                                                          CAEDEDL (CLS)
                                                                                                                                  05/07/2021 10:17 AM PST



LOAN #: 7165251609

(c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower

LOAN #: 7165251609

for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.  Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL   0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST

LOAN #: 7165251609

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL  0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST



LOAN #: 7165251609

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL  0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST

LOAN #: 7165251609

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL   0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST



LOAN #: 7165251609

actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

LOAN #: 7165251609

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 22, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.

**CALIFORNIA** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3005 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

Page 10 of 13

CAEFHA15DL  0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST

**LOAN #: 7165251609**

Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the**

CALIFORNIA – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

CAEFHA15DL  0419
CAEDEDL (CLS)
05/07/2021 10:17 AM PST

**LOAN #: 7165251609**

preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24
or applicable law.

**25. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to
reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security
Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons
legally entitled to it. Such person or persons shall pay any recordation costs.

**26. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed
hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county
in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the
book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without
conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee
herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions
for substitution.

**27. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by
Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security
Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument
and in any Rider executed by Borrower and recorded with it.

_____    5/10/21 (Seal)
JERRY R. BOYD                                                                                                          DATE

LOAN #: 7165251609

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _CA_

County of _Riverside_

On MAY 10, 2021, before me, _Danielle M. Ibarra, notary public_ (here insert name and title of the officer), personally appeared JERRY R. BOYD, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Danielle M Ibarra_

_Danielle M. Ibarra_ (NOTARY)

(SEAL)



DANIELLE M. IBARRA
Notary Public - California
Riverside County
Commission # 2237891
My Comm. Expires May 11, 2022

**Lender: Ameris Bank**
**NMLS ID: 408099**
**Broker: FRMC**
**NMLS ID: 791193**
**Loan Originator: Lionel Punchard**
**NMLS ID: 245755**

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                      Page 13 of 13                      CAEFHA15DL   0419
                                                                       CAEDEDL (CLS)
                                                                       05/07/2021 10:17 AM PST



**LOAN #: 7165251609**
**MIN: 1009207-0000253908-8**

FHA Case No.
**194-1671666-703-203B**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **10th**                    day of
**May, 2021,**                        and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the
same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**Ameris Bank, a Corporation**

("Lender") of the same date and covering the Property described in the Security Instru-
ment and located at:
**35675 DULOCK ROAD**
**WILDOMAR, CA 92595.**

The Property Address is a part of a planned unit development ("PUD") known as
**Hartford Park**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                          Page 1 of 3                          FHA15PUDRL  0815
                                                                                      P8700PUU (CLS)
                                                                              05/07/2021 10:17 AM PST



DOC #2021-0303598  Page 15 of 17

**LOAN #: 7165251609**

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:

   (i)  Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and

   (ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

   Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                                      Page 2 of 3                        FHA15PUDRL  0815
                                                                                        P8700PUU (CLS)
                                                                              05/07/2021 10:17 AM PST



**LOAN #: 7165251609**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____                                   5/10/21  (Seal)
**JERRY R. BOYD**                                                                          DATE

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                                Page 3 of 3                        FHA15PUDRL  0815
                                                                                 P8700PUU (CLS)
                                                                        05/07/2021 10:17 AM PST



EXHIBIT A

**LEGAL DESCRIPTION**

Real property in the City of Wildomar, County of Riverside, State of California, described as follows:

PARCEL 1: LOT(S) 161 TRACT NO. 30155 ACCORDING TO MAP RECORDED IN BOOK 423, PAGES 27 THROUGH 41, INCLUSIVE, OF MAPS, IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA. EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES AND MINERALS BELOW A DEPTH OF 500 FEET FROM THE SURFACE, BUT WITHOUT THE RIGHT TO ENTER UPON OR USE THE SURFACE OF SAID REAL PROPERTY, AS RESERVED BY SIDNEY SNYDER, ET AL, IN DEED RECORDED DECEMBER 19, 1958 IN BOOK 2383, PAGE 250 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 2: NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION AND IS NOT FOR THE USE OF THE GENERAL PUBLIC.

APN: 376483002

# EXHIBIT B



November 21, 2022

                              MS1260

Somer Countess-Boyd
35675 Dulock Rd
Wildomar CA 92595-


Re: Confirmation of your Successor in Interest Status for
    35675 Dulock Rd
    Wildomar CA 92595 ("Property")
    Loan Number: 1485904393

Dear Somer Countess-Boyd :

The purpose of this letter is to advise you that we have **confirmed**
your identity and ownership interest in the property as a Successor in
Interest ("Confirmed Successor in Interest") and provide you, as a Confirmed
Successor in Interest, with additional important information regarding the
mortgage loan obligation for which the above-referenced Property serves as
collateral.

1. **No Liability for Mortgage Debt for Non-Assuming Confirmed
   Successors in Interest**: UNLESS YOU, THE CONFIRMED SUCCESSOR IN
   INTEREST, ASSUME THE MORTGAGE LOAN OBLIGATION UNDER STATE LAW, YOU ARE
   NOT LIABLE FOR THE MORTGAGE DEBT AND CANNOT BE REQUIRED TO USE YOUR
   ASSETS TO PAY THE MORTGAGE DEBT, EXCEPT THAT THE LENDER HAS A SECURITY
   INTEREST IN THE PROPERTY AND A RIGHT TO FORECLOSE ON THE PROPERTY, WHEN
   PERMITTED BY LAW AND AUTHORIZED UNDER THE MORTGAGE LOAN CONTRACT.

2. **Right to Receive Certain Mortgage Loan Notices and
   Communications**: As a Confirmed Successor in Interest, you may be
   entitled to receive certain notices and communications about the
   mortgage loan if we are not already providing them to another Confirmed
   Successor in Interest or borrower on the account. Under applicable
   regulations, we are required to provide these notices and communications
   to only one Confirmed Successor in Interest or borrower on the mortgage
   loan account. Examples of these notices and communications include, but
   are not limited to, periodic statements, mortgage servicing transfer
   notices, and interest rate and payment change notices (if the mortgage
   loan account is an Adjustable Rate Mortgage).

   As these notices and communications are intended for borrowers, they may
   include language that suggests liability on the mortgage debt.
   **However, we want to be very clear in communicating to you that a
   Confirmed Successor in Interest who has not assumed the mortgage
   loan under State law has no personal liability as to the mortgage
   debt.** Any notices and communications provided to a non-assuming
   **Confirmed Successor in Interest are for information purposes only and
   are not intended to impose any personal liability.**

                                          SI211/GAR



Page 2 of 5                 November 21, 2022              Loan Number: 1485904393

3. **Acknowledgment Form**: In order to receive such notices and communications, you must execute and return the enclosed acknowledgment form to us at:

> **E-mail**: Successorininterest@yourmortgageonline.com
>
> **Mail**: Attention: Special Loans Dept. MS1260  **Fax**:
> 1 Corporate Drive, Suite 360          Attention: Special Loans
> Lake Zurich, IL 60047-8945            1-847-550-7419

By signing and returning the acknowledgment form, you, as the Confirmed Successor in Interest:

> a. Request receipt of notices and communications about the mortgage loan account if we are not providing them to another Confirmed Successor in Interest or borrower on the account; and
>
> b. Indicate that you understand that receipt of these notices and communications do not make you liable for the mortgage debt and that you are only liable for the mortgage debt if you assume the mortgage loan obligation under State law.

The acknowledgment form also notifies you that while there is no time limit to return the enclosed acknowledgment form, we will not begin sending such notices and communications to you (to the extent that they are not already being sent to another Confirmed Successor in Interest or borrower on the account) until the signed acknowledgment form is returned.

You have the right to request additional copies of the written notice and acknowledgment form orally or in writing.

4. **Failure to Execute and Return the Acknowledgment Form**: If you choose not to execute and return the acknowledgment form, you will not be entitled to receive certain notices and communications about the mortgage loan (that we are not already providing to another Confirmed Successor in Interest or borrower on the account). However, you will still be entitled to the Rights of a Confirmed Successor in Interest outlined below.

5. **Revoking a Previously Signed Acknowledgment Form**: If you execute and return the enclosed acknowledgment form, you may revoke the acknowledgment form at any time by sending written notice to us at: **Attention: Special Loans Department MS1260, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945.** Please be aware that if you revoke a previously submitted acknowledgment form, we will process the request as of the date we receive it and, to the extent you have been receiving certain notices and communications about the mortgage loan (that are not being already provided to another Confirmed Successor in Interest or borrower on the account), you will no longer receive them.

SI211/GAR



Page 3 of 5            November 21, 2022            Loan Number: 1485904393

6. **<u>Rights of a Confirmed Successor in Interest</u>**: Whether or not you, the Confirmed Successor in Interest, execute and return the enclosed acknowledgment form (or if you revoke a previously submitted acknowledgment form), you will still be entitled to submit Notices of Error under 12 CFR §1024.35 of RESPA (Regulation X), Requests for Information under 12 CFR §1024.36 of RESPA (Regulation X), and requests for a payoff statement under 12 CFR §1026.36 of TILA (Regulation Z) with respect to the mortgage loan account.

For purposes of the timing requirements applicable to RESPA Notices of Error and Requests for Information, a "day" means a calendar day excluding legal public holidays, Saturdays and Sundays.

A "Notice of Error" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by us, which asserts an error and that includes your name, information that enables us to identify the mortgage loan account, and the error you believe has occurred.

A "Request for Information" is any written request for information from you, other than notice on a payment coupon or other payment medium supplied by us, that includes your name along with information that enables us to identify the mortgage loan account and states the information you are requesting with respect to the mortgage loan account.

While some types of requests have shorter time periods for response, generally, we have a period of 30 days from receipt of your Notice of Error or Request for Information to provide you with a written response. For some Notices of Error or Requests for Information that we receive, we may utilize an additional 15-day extension for the response, if necessary. In all such cases, before the end of the initial 30-day period, we will provide you with written notice of any 15-day extension as well as our reasons for the extension.

The written response will provide notification that:

¤ For Notices of Error: The error you identified has been corrected; the effective date of the correction; and contact information, including a phone number, for further assistance; **<u>or</u>** upon reasonable investigation, we have determined no error occurred; a statement of our reasons for reaching this conclusion and your right to request the document relied upon by us in reaching our conclusion; and contact information, including a phone number, for further assistance.

¤ For Requests for Information: The requested information is attached; **<u>or</u>** upon reasonable investigation, we have determined that the requested information is not available, a statement of our reasons for this conclusion, and contact information, including a phone number, for further assistance.

For the 60-day period following receipt of your correspondence, we may not provide information to a consumer reporting agency concerning any overdue payment related to such Notice of Error. However, this does not prevent us from initiating foreclosure if proper grounds exist under the mortgage documents.

SI211/GAR